IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-0128-WJM-NYW

CODY WILLIAM COX,

    Plaintiff,

v.

DON WILSON, in his individual capacity

    Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR NEW TRIAL

Plaintiff Cody William Cox ("Plaintiff") brought this action under 42 U.S.C. § 1983 against Defendant Don Wilson ("Defendant"), based on injuries Plaintiff sustained during a police use-of-force incident. (ECF No. 1 at 1–3.) Following an eight-day jury trial commencing on December 6, 2016, the jury found in Defendant's favor. (ECF Nos. 170, 186, 196.) On December 16, 2016, the Court entered Final Judgment in favor of Defendant. (ECF No. 198.) On February 8, 2017, after a hearing, the Clerk of Court taxed costs against Plaintiff in the amount of $11,359.24. (ECF No. 205.)

Now before the Court is Plaintiff's Motion for New Trial ("Motion"). (ECF No. 201.) For the reasons set forth below, Plaintiff's Motion is granted.

## I. BACKGROUND

### A. Underlying Facts

Defendant was, at all relevant times, a Deputy Sheriff with the Clear Creek County, Colorado Sheriff's Office. (ECF No. 1 at 2.) On Friday, January 31, 2014,

Defendant's partner, Deputy Kevin Klaus, received a report of a silver pickup truck that was involved in a hit-and-run accident going west on I-70 near Georgetown, Colo. (ECF No. 62-2 ¶ 2.) Deputy Klaus pursued the pickup truck and reported that the vehicle was failing to yield to him. (ECF No. 62-3 at 1.)

Defendant responded to Deputy Klaus's report and began pursuing Plaintiff's silver pickup truck. (*Id.*) Defendant caught up with Deputy Klaus and the pickup truck near mile marker 230, where they were "nearly stopped" in "stop-and-go" traffic. (ECF No. 62-4 at 8–9.) Eventually Defendant was able to pull alongside Plaintiff near mile marker 228.5, such that Defendant's patrol vehicle was directly to the right of Plaintiff's truck and Deputy Klaus's vehicle was directly behind Plaintiff. (ECF No. 62-3 at 2.)

During trial, Defendant testified that he believed Plaintiff was hitting the vehicle directly in front of him in a "rolling forward" motion. (ECF No. 201-7 at 37.) Defendant testified that he believed it was then necessary to exit his patrol vehicle and open Plaintiff's "door, get inside, and pull the keys out of the ignition [to] stop this incident." (*Id*. at 37–38.)

According to Defendant's trial testimony, Defendant stepped out of his patrol vehicle with his gun drawn, and as he approached the right front wheel of Plaintiff's vehicle, the vehicle came "to the right, towards [Defendant], and forward." (*Id.* at 41.) Defendant then testified, "I fired my weapon one time at the driver as [Plaintiff's] window came in line with me" and that he did so in order "to stop [Plaintiff] from crushing [him] between the two cars." (*Id.*)

Plaintiff maintains that he "remained in his driver's seat during the entirety of the incident, and made no threatening or aggressive move toward" Defendant prior to the

2

shooting. (ECF No. 201 at 7.) To support Plaintiff position he points to the testimony of Ms. Kincaid, the driver immediately situated in front of Plaintiff's vehicle who witnessed the incident. (*Id*. at 6–9.) Ms. Kincaid testified that she "did not observe [Plaintiff's] vehicle make any sudden or abrupt movements immediately before [Defendant] discharged his firearm." (*Id*. at 7 (citing ECF No. 201-2 at 12).) Further, according to the "photographs taken of the scene of the shooting" "the left front and left rear wheels of the vehicle were parallel to the fog line marking the left margin of the westbound lanes, such that the vehicle was facing parallel in the lane." (ECF No. 201 at 8 ( citing Plaintiff's Trial Exhibits 1-16).) Thus, Plaintiff contends that because "the front wheels of his vehicle were straight" Defendants testimony that Plaintiff's vehicle moved "forward and to the right" was false. (ECF No. 201 at 8–9.)

Plaintiff, age thirty-six on the day of incident, was shot in the lower right neck area, and as a result, he "suffered a compound fracture of the cervical spine, which has resulted in permanent" "incomplete quadriplegia." (ECF No. 1 at 3; ECF No. 161-1 at 1.)

**B.     Claim Presented**

At trial, Plaintiff asserted that Defendant used excessive force when he shot Plaintiff, in violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure. (ECF No. 187 at 17.) Claims of excessive force by law enforcement officers are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances [confronting the officer], without regard to [the officer's] underlying intent or motivation." *Id*. at 397.

Thus, any evidence regarding Plaintiff, of which Defendant was unaware at the time of his conduct, was legally irrelevant to the jury's evaluation of the reasonableness of Defendant's conduct. Accordingly, the Court instructed the jury to "consider all the relevant facts and circumstances Defendant reasonably believed to be true at the time of the encounter." (ECF No. 187 at 22.) Critically, for resolution of the instant Motion and as discussed at length below, at no point prior to shooting Mr. Cox did Defendant have any knowledge whatsoever regarding the driver he was pursuing and thus, *ipso facto,* did he have any knowledge of Plaintiff's history of law enforcement contacts.

## II. LEGAL STANDARD

Plaintiff brings his motion seeking a new trial under Rule 59(a)(1), which permits the Court to order a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Court may grant such a motion where "the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)). Plaintiff contends that a new trial is warranted both because: (1) the verdict "was contrary to the manifest weight of the evidence introduced at trial," and (2) because "improper conduct by defense counsel at trial compromised [his] right to a fair trial." (ECF No. 201 at 2, 10.) Because the Court concludes that clear and repeated misconduct during the trial on the part of Attorney Leslie Schluter, lead counsel for Defendant, requires the granting of a new trial to Plaintiff, the Court does not address Plaintiff's argument that the jury's verdict was against the manifest weight

4

of the evidence.

District courts may order a new trial when the moving party shows that it was prejudiced by attorney misconduct during trial. *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1175 (10th Cir. 2003); *see also Ryder v. City of Topeka*, 814 F.2d 1412, 1426 (10th Cir. 1987). Additionally, "[t]he decision on whether counsel's misconduct at trial was so egregious as to require retrial is left largely to the discretion of the district court." *Abuan*, 353 F.3d at 1175; *Angelo v. Armstrong World Indus. Inc.*, 11 F.3d 957, 962 (10th Cir. 1993); *see also Spahr v. Ferber Resorts, LLC*, 419 Fed. App'x 796, 805 (10th Cir. 2011) ("[T]he district judge [] is usually in the best position to determine any prejudice and the need for a new trial."); *see also Whittenberg v. Werner Enterprises Inc.*, 561 F.3d 1122, 1128 (10th Cir. 2009) (noting that the trial judge "is uniquely positioned to assess the prejudicial effect of an improper argument in the context of the overall trial"). The Court remains mindful, however, that it should not grant a new trial "simply as a punitive measure to punish the misconduct of counsel" or because "'the losing party can probably present a better case on another trial.'" *Ryder*, 814 F.2d at 1425–26 (quoting 6A J. Moore, *Moore's Federal Practice* § 59.08(3) (2d ed., 1986)).

Further, "[i]f a timely objection [to the misconduct] has been made, a failure to move for a mistrial does not preclude a later motion for new trial based on the misconduct." 12–59 J. Moore, *Moore's Federal Practice* § 59.13(c) (3d ed., 2017) (citing *Park West Galleries, Inc. v. Hochman*, 692 F.3d 539, 547–48 (6th Cir. 2012) (proper objection to known misconduct at trial is sufficient, without motion for mistrial, to preserve right to later seek new trial under Rule 59) and *Harrison v. Purdy Bros.*

5

*Trucking Co.*, 312 F.3d 346, 353 (8th Cir. 2002) ("A party need not object to an offensive argument and move for a mistrial in order to preserve the right to bring a motion for a new trial.")).

In order to show that his substantial rights were adversely affected, Plaintiff must show that the alleged misconduct "substantially influence[d] the verdict or denie[d him] a fair trial." *Hoops v. Watermelon City Trucking, Inc.*, 846 F.2d 637, 641 (10th Cir. 1988); *see generally* 11 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2809 (3d ed., Apr. 2017 update). Moreover, "misconduct by trial counsel [will generally] result in a new trial if the flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1192 (9th Cir. 2002) (internal quotations and citations omitted).

In analyzing whether the alleged misconduct of counsel was unfairly prejudicial, the Court will "consider 'the totality of the circumstances, including the nature of the comments, their frequency, their possible relevance to the real issue before the jury, the manner in which the parties and the court treated the comments, the strength of the case (*e.g.*, whether it is a close case) and the verdict itself.'" *Cadorna v. City and Cnty. of Denver, Colo.*, 245 F.R.D. 490, 491 (D. Colo. 2007) (quoting *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)); *see also Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1998) (reviewing attorney misconduct "within the context of the court's rulings on objections, the jury charge, and corrective measures employed by the trial court").

## III. ANALYSIS

In ruling on Plaintiff's Motion, the Court has carefully reviewed its prior orders, the docket, and the entire trial transcript to determine whether the trial was fundamentally unfair to Plaintiff. After substantial and considered deliberation, the Court has reached what it considers two inescapable conclusions: first, that Ms. Schluter's misconduct prejudiced Plaintiff and denied him a fair trial; and, second, that the extent and degree of the prejudice was of such a magnitude that a new trial is the only remedy equity and justice will allow in these circumstances.

### A. The Pretrial Record Reflects that Defense Counsel Intended to Make Inflammatory and Inadmissible Evidence a Centerpiece at Trial

The clear record in this case will show that Ms. Schluter engaged in a series of improper acts intended to inflame and distract the jury, in defiance of the Court's repeated evidentiary rulings and Orders.

Before trial, Plaintiff moved to exclude several categories of prior "bad acts" or character evidence as improper and prejudicial. (*See* ECF No. 126.) Defendant opposed Plaintiff's motion, arguing that evidence of Plaintiff's "pre-incident arrest and criminal history" showed a "history of antipathy toward law enforcement and fighting officers [while] intoxicated" on past occasions, which also tended to show that Plaintiff was resisting arrest or attempting to flee at the time Defendant shot him. (ECF No. 136 at 3–4.) On this basis, Defendant argued open-endedly for introducing unspecified evidence of Plaintiff's "pre-incident interactions with law enforcement[.]" (*Id*. at 3.)

In its Order granting in part Plaintiff's Motion *in Limine*, the Court flatly rejected this argument, noting that such evidence "fit[s] squarely within the general exclusion of

7

Federal Rule of Evidence 404(b)," and "has no real bearing on whether the Defendant's use-of-force was objectively reasonable." (ECF No. 147 at 5–6.) As a consequence, the Court specifically ordered that "evidence of Plaintiff's "prior interactions with law enforcement" [are] inadmissible under Rule 404(b)(1). (*Id.*)

During the Final Trial Preparation Conference ("FTPC"), Ms. Schluter quite literally "begged" the Court to allow her to re-brief Plaintiff's "prior interactions with law enforcement" under Rule 404(b).[1] Ms. Schluter argued that this category of evidence was "a key to the case," and that the "extraordinary nature" of the Court's supposedly "one-sided determination" under FRE 404 compelled her to request re-briefing. Ms. Schluter stated that Plaintiff's "extensive prior interactions with law enforcement" and his alleged statements at various times to health care providers, were instances that showed his inclination or character trait of "flight or fight[.]" Counsel summarized that this evidence regarding Plaintiff's prior conduct and character was "critical to [her] defense."

Reluctantly, the Court allowed her to file a Motion for Reconsideration (ECF No. 156), but, in a second Order on this issue, ultimately denied it for the same reasons outlined in the Court's previous *in limine* ruling (ECF No. 163). In short, it was evident that the central theme of counsel's intended theory of defense was to tell a lengthy tale regarding Plaintiff's history of allegedly criminal conduct on other occasions, conduct that was *entirely unknown* to Defendant, irrelevant to any fact or claim in dispute, and

---

[1] The Court has independent access to the Court Reporter's unofficial Bridge transcripts. The quotes contained in this paragraph are from the Bridge transcript created on November 18, 2016 during the FTPC.

wildly prejudicial.  Also, during the FTPC the Court acknowledged Ms. Schluter's request to introduce evidence of Plaintiff's outstanding arrest warrants, but cautioned her that while an offer of proof would be accepted at trial, the jury would need to be excused so that it could be made outside of its presence.

**B.    Defense Counsel's Conduct During Trial**

    1.    <u>Opening Argument</u>

Ms. Schluter's plan of intentionally flaunting the Court on these matters became apparent from the very outset of the trial.  Less than five minutes into her opening statement, and notwithstanding the Court's unequivocal pretrial rulings on these issues, Ms. Schluter stated that the day before the shooting incident at issue in the trial, Plaintiff was "placed [] under arrest on outstanding warrants" and that Plaintiff "was dedicated to fleeing from law enforcement."  (ECF No. 201-9 at 14.)  Plaintiff objected and the Court reminded Ms. Schluter that she "[b]est just be talking about evidence that [she knows] is coming in."  (*Id*.)  Ms. Schluter acknowledged the admonishment, stating "[t]hat's true, your Honor."  (*Id*.)  Nonetheless, twenty seconds later, Ms. Schluter returned to her central trial theme of relying on excluded and inflammatory evidence by stating that the jury would hear from Officer Ted Atkinson "who [on a prior occasion] had to affect this man's arrest[.]" (*Id*. at 15.)  Again, Plaintiff objected and the Court sustained the objection.  (*Id*.)  Undeterred, Ms. Schluter made reference to the arrest warrants *yet again*, a mere thirty-seconds later.  (*Id*.)

Ms. Schluter asserts in her response brief to Plaintiff's Motion that she "had a good-faith basis to believe that the evidence discussed in opening would be admitted

9

during trial[,]" "[a]lthough counsel ultimately decided not to pursue admission of" the arrest warrants. (ECF No. 203 at 12.) The Court finds Ms. Schluter's "good-faith" assertion utterly disingenuous. First, Ms. Schluter did, eventually, seek admission of the arrest warrants by way of an offer of proof, and the Court ruled that *no such evidence would be admitted into evidence*. (*See* ECF No. 201-8 at 28–30.) Second, the Court's ruling as to the arrest warrants during trial was wholly consistent and in line with what was discussed during the FTPC. Thus, it is nearly impossible for the Court to believe that Ms. Schluter had a "good-faith" belief that evidence of the arrest warrants would be admitted. The unalloyed fact of the matter is that counsel simply refused to accept and live within limits imposed by the Court's evidentiary rulings. Moreover, if Ms. Schluter was somehow unsure about the Court's clear rulings, she should have made an offer of proof *prior* to her opening argument, or otherwise addressed the issue outside the jury's presence.

    2.    <u>Witness Cross-Examination</u>

If anything, Ms. Schluter engaged in progressively more egregious misconduct during the course of the trial. In the Court's view, the most inflammatory reference to Plaintiff's prior interactions with law enforcement and the arrest warrants came during Ms. Schluter's cross-examination of Hunter McAlpin, the Plaintiff's former girlfriend.

At a side-bar during the afternoon of the second day of trial, the Court anticipated that Ms. Schluter would soon be delving into matters touching upon the Plaintiff's prior contacts with police. The Court called counsel to the bench and very clearly reminded Ms. Schluter of the Court's advisement during the FTPC—that if she intended to introduce evidence of the outstanding arrest warrants she would need to

10

alert the Court in advance so that the jury could be excused.

To the undersigned's disbelief, within one minute of beginning her cross-examination of Ms. McAlpin, Ms. Schluter deliberately violated the Court's two *in limine* Orders, notwithstanding the reminder she had been given just seconds before. (*See* ECF No. 201-8 at 19–20.) The improper questioning of the witness went as follows:

> Q. Mr. Cox was driving a Toyota Tacoma that the two of you shared, right?
> A. His – the ownership was in his name.
> Q. But you handled the management of the – of the vehicle, right?
> A. Yes. I was – well, he wanted me to take care of his vehicles.
> Q. And so, in fact, he had given you powers of attorney in January – in mid-January of that year?
> A. Yes, he did.
> Q. And he had signed an emancipation that declared that he was emancipated from his mother as a 36-year-old man, right? And she was to make – and you were the one who was designated with the power of attorney and the medical power of attorney –
> A. Yes.
> Q. Correct? And this was done in anticipation of his – of his likely entering custody.

(*Id.*)

Ms. Schluter's remark that Plaintiff would likely be "entering custody" is both a reference to Plaintiff's "prior interactions with law enforcement," evidence previously and repeatedly excluded as irrelevant and prejudicial in both of the Court's *in limine* rulings, and the remark was a lead-up to evidence of the alleged arrest warrants, which had (as of then) still not been cleared for admission into evidence by the Court. It is the Court's view that, without any possible doubt, this line of questioning constituted intentional and defiantly contumacious misconduct on the part of Ms. Schluter.

First, the Court could not have been any clearer in its Orders that evidence of

11

"prior interactions with law enforcement" was inadmissible under Federal Rules of Evidence 404, 401, and 403. This was communicated to Ms. Schluter unambiguously, in writing, in two separate Court Orders, discussed at the FTPC, and repeated to her by the undersigned at the side-bar just moments before she embarked on the offending portion of her cross examination of Ms. McAlpin. (*See* ECF Nos. 147, 163.) Second, Ms. Schluter was reminded, on multiple occasions, that *before* she attempted to introduce such evidence she was required to request a hearing outside the presence of the jury to give her offer of proof on this point. For reasons known only to her, Ms. Schluter failed to ever do so.[2]

Finally, the fact that Ms. Schluter continued to transgress the boundary of what the Court viewed as inadmissible evidence strongly suggests that her behavior was neither inadvertent nor unintentional. In Plaintiff's view, this was done for a "calculated purpose" to "influence the jury." (ECF No. 201 at 14.) Having presided over this trial, the undersigned must agree that this was not merely an accident or inadvertent overstep of the Court's Orders, but was a calculated effort to introduce highly inflammatory and prejudicial evidence for consideration by the jury, in obstinate defiance of the Court's Orders, at no matter the cost.

C.     **Showing of Prejudice**

The Tenth Circuit has recognized that evidence of other crimes, wrongs and misconduct can be highly prejudicial and can have a strong impact on juries, as it tends

---

[2] After the Court sustained Plaintiff's objection to these questions, the jury was excused and the undersigned vented his extreme displeasure with Ms. Schluter over what had just transpired. It was only after this exchange that defense counsel *finally* made her offer of proof regarding the arrest warrants.

12

to imply that the individual acted in conformity with his or her character on the particular occasion in question. *See United States v. Biswell*, 700 F.2d 1310, 1318 (10th Cir. 1983) (interpreting Federal Rule of Evidence 404 and noting that this type of evidence can be "of the most damning sort").

Here, evidence of outstanding arrest warrants and of being in prior (and completely unrelated) law enforcement custody is "of the most damning sort" and is directly relevant to the central issue of liability in this case. *Id*. The jury was instructed that "[a]n officer may not use deadly force to prevent a suspect from escaping unless deadly force is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." (ECF No. 187 at 21.) It cannot be reasonably gainsaid that reference to Plaintiff "entering custody" could negatively color his character in a substantial manner, diminish his credibility, and even lead a person (including a juror) to believe that by virtue of being subject to arrest in the past, Mr. Cox would certainly pose a threat to law enforcement in the future – including, of course, the highway incident which gave rise to this lawsuit.

As previously noted, none of this had any relevance to the claim in this case because Defendant was completely unaware of Plaintiff's prior criminal history or incidents with law enforcement.[3] Thus, the Court finds that reference to Plaintiff "likely entering custody" is particularly troubling and highly prejudicial, given that evaluation of

---

[3] The Court stated in one of its previous Orders that "any evidence [] of which the Defendant was unaware could not have informed his perception of risk when he arrived on the scene, nor could it have informed his belief that Plaintiff was accelerating his vehicle towards him." (ECF No. 147 at 8.)

Plaintiff's actions and behavior during the incident is a critical factor when analyzing liability. This incident marked the *coup de grâce* of Ms. Schluter's misconduct.

Ms. Schluter now argues that any prejudice was cured due to the Court's handling of the improper remark. Ms. Schluter points out that Plaintiff's counsel objected before Ms. McAlpin could respond, that the Court sustained the objection, and then instructed the jury "to totally disregard that question" and "that the comments and questions and arguments of counsel are not evidence." (ECF No. 203 at 13 (quoting ECF No. 201-8 at 38).) While the Court did issue a prompt and curative instruction, the Court has little confidence that the instruction was sufficient to ameliorate the prejudicial impact and harm done, especially having followed on counsel's deliberate preview of her intended central trial theme in her improper opening comments. "'[T]he bench and bar are both aware that cautionary instructions are effective only up to a certain point . . . [A]fter repeated exposure of a jury to prejudicial information, . . . cautionary instructions will have little, if any, effect in eliminating the prejudicial harm.'" *Cadorna*, 245 F.R.D. at 495 (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977)).

Based on the foregoing, the Court finds that Plaintiff has made an "essential" showing of prejudice caused by Ms. Schluter's introduction of unduly prejudicial and inadmissible evidence, such that a new trial is necessary to curb this miscarriage of justice. *Ryder*, 814 F.2d at 1424. The Court also notes that it is deeply concerned with the ethical implications of Ms. Schluter's failure to follow the Court's rulings and

Orders.[4]  Accordingly, the Court grants Plaintiff's Motion to the extent that it seeks a new trial based on attorney misconduct.

## IV.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Plaintiff's Motion for New Trial (ECF No. 201) is GRANTED.  As a consequence, the Final Judgment (ECF No. 198) and the Award of Costs (ECF No. 205) are hereby **VACATED.**

A new, 8-day jury trial is hereby set to commence on **Monday, September 25, 2017 at 8:30 a.m.** in Courtroom A801.  The Final Trial Preparation Conference is hereby set for **Monday, September 11, 2017 at 11:00 a.m.**  Counsel are directed to this Court's Revised Practice Standards to ensure compliance with all deadlines triggered by the dates of the Final Trial Preparation Conference and Trial.

Dated this 2nd day of May, 2017.

BY THE COURT:

William J. Martínez
United States District Judge

---

[4] Ms. Schluter's deliberate refusal to abide by the Court's Orders during trial was contumacious conduct that the Court believes was a serious breach of her professional duty.  In the Court's view, Ms. Schluter's misconduct violated Rules 3.4 and 8.4 of the Colorado Rules of Professional Conduct ("RPC").  See Colo. RPC 3.4 and 8.4 (2016).  The Colorado RPC are adopted as standards of professional responsibility for the United States District Court for the District of Colorado.  See D.C.COLO.LATTYR 2(a).  Rule 3.4 prohibits lawyers from disobeying court orders and prohibits lawyer misconduct at trial, such as alluding to matters not supported by admissible evidence.  Colo. RPC 3.4(c)–(e).  Rule 8.4 states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."  Colo. RPC 8.4(d).